**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Case No.**

**KEVIN FURMAN,**
     Plaintiff,

vs.

**ANTHONY GIROUARD,** individually;
**MICHAEL SCAGLIONE**, individually;
**TAMPA POLICE DEPARTMENT**, a
public entity; **CITY OF TAMPA**, a
municipal corporation,
     Defendants.

                                 /

## COMPLAINT

Plaintiff, KEVIN FURMAN, by and through counsel, hereby files his complaint and alleges:

## INTRODUCTION

On April 12, 2024, Tampa Police Department Officers Michael Scaglione and Anthony Girouard entered the curtilage of Plaintiff Kevin Furman's home and crossed the threshold of his doorway to effectuate a warrantless misdemeanor arrest. In doing so, the officers used force severe enough to break Mr. Furman's nose and cause him to lose consciousness for approximately eight seconds. The State dismissed all charges against Mr. Furman, and the Tampa Police Department terminated Scaglione.

## JURISDICTION

1.    This is an action for damages exceeding $75,000, not including costs, attorney's fees, and prejudgment interest.

2.    The claims asserted arise pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, the Fourteenth

Amendment to the United States Constitution, and the laws of the State of Florida. This Court has jurisdiction to hear all claims contained in this action.

3.     This court has original jurisdiction over claims brought pursuant to 42 U.S.C. § 1983 and concurrent subject matter jurisdiction over the claims brought pursuant to Florida law.

4.     Venue is properly in Hillsborough County, Florida because these events took place in Hillsborough County, which is within the boundaries of the Middle District of Florida.

5.     Plaintiff has performed all conditions precedent, in accordance with §768.28(6), Florida Statutes, and all other requirements, before bringing this action. All conditions precedent have otherwise occurred, been performed, been met, been waived, would be futile, or are otherwise inapplicable.

6.     This complaint is based on the individual and concerted conduct of the named Defendants in using the police power of the State of Florida to deprive Mr. Furman of his constitutional and civil rights. The Defendants' conduct, individually and jointly, violated the rights of Mr. Furman under the Fourth Amendment to the United States Constitution as well as the statutes and laws of Florida.

7.     At all times material to this action, all Defendants acted under color of state or local law.

## PARTIES

8.     Plaintiff KEVIN FURMAN (hereinafter the "Plaintiff" or "Furman" or "Mr. Furman"), was a resident of the State of Florida at the times alleged in the Complaint.

9.     The City of Tampa (the "City") is a municipal government entity organized under the Constitution and laws of Florida, and as such is an "agency" within the scope of Section 122.3187(3)(a), Florida Statutes.

10.    The Tampa Police Department ("TPD") is a law enforcement agency

and department of the City of Tampa, Florida, and at all times material hereto was acting under color of the state law.

11. At all relevant times, ANTHONY GIROUARD (hereinafter "GIROUARD" or "Officer Girouard" was a duly authorized employee and agent of Tampa Police Department, Officer Girouard is believed to be a citizen of the State of Florida residing in Tampa and is over the age of 18 years. Girouard is sued in his individual capacity.

12. At all relevant times, MICHAEL SCAGLIONE was a duly authorized employee and agent of Tampa Police Department, Michael Scaglione is believed to be a citizen of the State of Florida residing in Tampa and is over the age of 18 years Michael Scaglione is sued in his individual capacity.

13. The causes of actions contained in this complaint occurred and accrued in Hillsborough County, Florida, in the Middle District of Florida.

## GENERAL ALLEGATIONS

### A.    Kevin Furman

14. For approximately six years, Kevin Furman lawfully resided at 8505 N. 10th Street, Tampa, Florida, with Ms. Marilyn Hernandez and their children.

15. The home in which Plaintiff resided at 8505 N. 10th Street, Tampa, Florida was enclosed by a fence.

16. On April 12, 2024, shortly after midnight, Officers Michael Scaglione and Anthony Girouard responded to a call regarding a domestic dispute at the residence.

17. When Officers Scaglione and Girouard arrived, Ms. Marilyn Hernandez and her daughter were outside the fence, in a vehicle.

18. Mr. Furman was inside the residence on the phone with dispatch.

19. Officer Girouard entered the fence, stood at the porch and spoke with Mr. Furman.

20. Mr. Furman identified himself and explained, "My wife put her

hands on me," and "I called, and her son and her punched me in my face."

21.    Officer Girouard then exited the fence and walked back to his vehicle where he took statements from both Ms. Hernandez and her daughter.

22.    Ms. Hernandez did not deny physically attacking Mr. Furman. She explained to Officer Scaglione, "I pushed him… I ended up like hitting him in the face."

23.    Ms. Hernandez later explained to Officer Girouard, "He charged at my daughter . . . so I jumped in the middle, and he said that I hit him in the face and then he grabbed the cup and he threw it at me."

24.    Officer Girouard asked what happened next, to which Ms. Hernandez responded, "We came outside."

### B.    The Seizure and Use of Force.

25.    Officers Scaglione and Girouard decided to arrest Mr. Furman but disagreed on the appropriate charges:

**Girouard**: He's um aggravated battery. Glass cup caused damage.

**Scaglione**:  Aggravated?

**Girouard**:   Yeah, why not?

**Scaglione**:  I don't think it's aggravated

**Girouard**:   I mean it's still battery. He's the primary.

26.    Officers Scaglione and Girouard walked onto the fenced-in property without a warrant to effectuate an arrest.

27.    Mr. Furman was standing in the doorframe when law enforcement arrived at the door:



28.     The officers initiated the arrest.

29.     Officers commanded Furman to get on the ground and to put his hands behind his back.

30.     The officers used force to effectuate the arrest of Furman.

31.     TPD later terminated Officer Scaglione, following an investigation that determined, among other things, that his use of force was excessive.

32.     The force deployed broke Mr. Furman's nose and caused him to lose consciousness for approximately eight seconds. He required reconstructive surgery.

33.     The force utilized included: Scaglione choked Mr. Furman, strangled Furman with his bare hands and punched him in the face multiple times with a closed fist. Girouard struck Mr. Furman in the thigh and abdomen:



*Scaglione's rear naked chokehold that caused Mr. Furman to lose consciousness*



*Scaglione's strangulation of Mr. Furman with his bare hands*



*Closed fists punches to Mr. Furman*

34.   EMS evaluated Mr. Furman on scene, and he was then transported directly to jail rather than the hospital.

35.   Upon arrival at jail, Mr. Furman was rejected by medical personnel for his broken nose and transported to St. Joseph's Hospital for clearance.

36.   On April 13, 2024, Officer Girouard submitted a criminal affidavit charging Mr. Furman with battery, after having two prior batteries, a felony, marijuana possession, assault, and resisting without violence.

37.   Mr. Furman was not charged by Girouard with resisting the arrest with violence.

38.   On April 23, 2024, Mr. Furman underwent closed reconstructive nose surgery under general endotracheal anesthesia.

39.   On May 3, 2024, in Case No. 2024-CM-004769, the State filed an Information charging Mr. Furman with resisting an officer without violence.

40.   On November 6, 2024, the State Attorney's Office dismissed the case in its entirety.

## CAUSES OF ACTIONS

### COUNT I – Unlawful Entry — Under 42 U.S.C. § 1983, Fourth Amendment
(Scaglione, Girouard)

41.   The allegations of paragraphs 1 through 40 are reaffirmed and incorporated herein by reference.

42.   At all times relevant, Defendants Michael Scaglione and Anthony Girouard were Tampa Police Department officers acting under color of state law and within the course and scope of their employment.

43.   Mr. Furman lawfully resided at 8505 N. 10th Street, Tampa, Florida, and was at or just inside the front doorway of his home when Defendants arrived.

44.   On April 12, 2024, Defendants Scaglione and Girouard entered the curtilage of his private property and then breached the threshold of Mr. Furman's home to effectuate a warrantless arrest.

45.   No exigency or emergency was occurring, and no observable objective facts existed giving rise to the inference an exigency or emergency was occurring.

46.   The unlawful entry was conducted without any of the following justifications: there was no threat to the officer's safety, no destruction of evidence, no imminent harm to others, no consent, and no attempt by Mr. Furman to escape from the home. The Officers recklessly and deliberately breached Mr. Furman's Fourth Amendment rights by entering his home.

47.   The right to be free from warrantless, nonconsensual entry into one's home, including the curtilage, to effectuate a warrantless arrest absent exigent circumstances or other recognized exception was clearly established well before April 12, 2024.

48.   A reasonable officer would have known that entering the home without a warrant, consent, or exigent circumstances violates the Fourth Amendment.

49.   Any and all force used by law enforcement to effectuate the unlawful

and illegal warrantless arrest was excessive.

50.    Defendants' unlawful entry was a direct and proximate cause of Plaintiff's injuries and damages, including but not limited to the resulting seizure and application of force inside the home, broken nose, the need for surgery and related expenses, exposure to criminal prosecution, loss of liberty, emotional distress, and mental anguish.

51.    The acts of the Defendants, and each of them, were wanton, willful, unlawful, malicious, and vicious, without regard for the system of the justice in the United States. Defendants, and each of them, fully knew that Plaintiff.

WHEREFORE, Mr. Furman demands judgment against Scaglione and Girouard for damages, punitive damages, injunctive relief, prejudgment interest in liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

## COUNT II – Excessive Force— Under 42 U.S.C. § 1983, Fourteenth Amendment
(Scaglione, Girouard)

52.    The allegations of paragraphs 1 through 40 are reaffirmed and incorporated herein by reference.

53.    At all relevant times, Defendants Scaglione and Girouard acted under color of state law as law enforcement officers with the Tampa Police Department.

54.    Defendants Scaglione and Girouard intentionally used force against Mr. Furman, including a chokehold causing him to lose consciousness for approximately eight seconds and strikes to the face and abdomen.

55.    That force was excessive.

56.    At the time Defendant Scaglione applied the chokehold, Mr. Furman posed no immediate threat to the safety of Defendant Girouard or any other officer.

57.    Defendants Scaglione and Girouard deployed a severe amount of

force.

58.    At the time the force was deployed, Furman posed no immediate threat to the safety of the arresting officers.

59.    Mr. Furman was not accused of committing a serious criminal offense.

60.    Mr. Furman was not actively resisting or trying to evade arrest by flight.

61.    Both defendant Scaglione and Girouard's use of force was objectively unreasonable under the circumstances and violated Mr. Furman's rights under the Fourth Amendment to the United States Constitution.

62.    As a direct and proximate result of Defendants Scaglione and Girouard's violation of Mr. Furman's civil rights, Mr. Furman suffered damages, including metal anguish, bodily injury requiring surgery, and pain and suffering.

WHEREFORE, Furman demands judgment against Scaglione and Girouard for damages, punitive damages, injunctive relief, prejudgment interest in liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

## COUNT III – Battery
(Girouard, City of Tampa)

63.    The allegations of paragraphs 1 through 40 are reaffirmed and incorporated herein by reference.

64.    At all times relevant, Defendant Girouard acted within the scope of employment as a law enforcement officer with the Tampa Police Department.

65.    Plaintiff suffered a harmful and offensive contact by Officer Girouard, among other things,  Mr. Furman was kneed numerous times in the thigh and abdomen while on the floor, with his hand behind his back.

66.    Mr. Furman did not consent to the touching.

67.    That force was excessive.

68.    Girouard acted intentionally, in bad faith, or with malicious purpose

or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. ***Alternatively***,[1] Defendant Girouard did not act intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

69.    As a direct and proximate result of Girouard's conduct, Plaintiff suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation embarrassment, loss of capacity of the enjoyment of life, medical treatment. The losses are permanent and/or continuing and Plaintiff will continue to suffer losses in the future.

WHEREFORE, Furman demands judgment against Defendants for compensatory damages, costs, and such other and further relief as the Court deems appropriate.

### COUNT IV – Battery
(Scaglione, City of Tampa)

70.    The allegations of paragraphs 1 through 40 are reaffirmed and incorporated herein by reference.

71.    At all times relevant, Defendant Scaglione acted within the scope of

---

[1] It is well-settled that "the 'nature of Florida Statutes § 768.28 tends to require a plaintiff to plead alternative and inconsistent claims against a government entity and its employees.'" *Valdes v. Miami-Dade Cty.*, No. 12-22426-CIV, 2013 U.S. Dist. LEXIS 139335, 2013 WL 5429938 at *18 (S.D. Fla. Sept. 27, 2013) (quoting *Petithomme v. Cty. of Miami-Dade*, No. 11-20525-CIV, 2011 U.S. Dist. LEXIS 98152, 2011 WL 3648622, *3 n.2 (S.D. Fla. Aug. 16, 2011).

"In fact, Section 768.28(9)(a) 'tends to cause plaintiffs to bring 'mutually exclusive' claims in the alternative against a government and its employees because the state is immune from acts committed with bad faith or malice, while employees must have acted with bad faith or malice to be held personally liable." *Garayoa v. Reina*, No. 16-20213-Civ-COOKE/TORRES, 2016 U.S. Dist. LEXIS 78518, at *7 (S.D. Fla. June 16, 2016) (quoting *Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2007 U.S. Dist. LEXIS 86475, 2007 WL 4199606, *3 (S.D. Fla. Nov. 26, 2007)). As such, this and other state law claims plead employer and employee liability in the alternative.

employment as a law enforcement officer with the Tampa Police Department.

72.    Plaintiff suffered a harmful and offensive contact by Officer Scaglione, when among other things, Mr. Furman was placed in a chokehold causing him to lose consciousness for approximately eight seconds. Furman was also punched in the face four times resulting in a broken nose.

73.    Mr. Furman did not consent to the touching.

74.    That force was excessive.

75.    Defendant Scaglione acted intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. ***Alternatively***, Defendant Scaglione did not act intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

76.    As a direct and proximate result of Girouard's conduct, Plaintiff suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation embarrassment, loss of capacity of the enjoyment of life, medical treatment. The losses are permanent and/or continuing and Plaintiff will continue to suffer losses in the future.

WHEREFORE, Furman demands judgment against Defendants for compensatory damages, costs, and such other and further relief as the Court deems appropriate.

### COUNT V – Civil Trespass to Real Property
(Scaglione, Girouard, City of Tampa)

77.    The allegations of paragraphs 1 through 40 are reaffirmed and incorporated herein by reference.

78.    This is an action for civil trespass to real property.

79.    Civil trespass to real property occurs when there is an injury to or use of the land of another by one having no right or authority. To sue or recover for trespass, the plaintiff must have been the owner or rightfully in possession of the land at the time of the trespass. *Gunning v. Equesdeader.com, Inc.*, 253

So. 3d 646, 648 (Fla. 2d DCA 2017).

80. At all times prior to the unlawful actions of Defendants Scaglione and Girouard, Mr. Furman was in possession of the property 8505 N. 10th Street.

81. At all times relevant, Defendant Scaglione acted within the scope of employment as a law enforcement officer with the Tampa Police Department.

82. Defendants Scaglione and Girouard acted intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. ***Alternatively***, Defendants Scaglione and Girouard did not act intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

83. Scaglione and Girouard committed trespass when they breached the fence and then threshold of the home to effectuate a warrantless arrest without a right or the authority to do so.

84. Even if Scaglione and Girouard had probable cause to arrest Mr. Furman, they did not have the authority to enter the curtilage of his home and later the home itself to effectuate that arrest without a warrant, consent, or exigent circumstances.

85. Defendants' unlawful entry was a direct and proximate cause of Plaintiff's injuries and damages, including but not limited to the resulting seizure and application of force inside the home, broken nose, the need for surgery and related expenses, exposure to criminal prosecution, loss of liberty, emotional distress, and mental anguish

WHEREFORE, Mr. Furman demands judgment against Defendants for compensatory damages, costs, and such other and further relief as the Court deems appropriate.

**COUNT VI - Federal Civil Rights Violations (Federal Civil Rights — Failure to Intervene: Violation of the Fourth Amendment to the United States**

## Constitution, Pursuant to 42 U.S.C. §1983
(Scaglione, Girouard)

86.    The allegations of paragraphs 1 through 40 and 42-49 and 54-60 are reaffirmed and incorporated herein by reference.

87.    Defendants Scaglione and Girouard violated Mr. Furman's federal constitutional rights by failing to intervene and/or stop the Fourth Amendment violations  alleged in Counts I and II.

88.    Officer Scaglione had the opportunity and ability to stop the constitutional law violations against Mr. Furman by Girouard, but failed to intervene.

89.    Defendant Girouard had the opportunity and ability to stop the constitutional law violations against Furman by Scaglione, but failed to intervene.

90.    It was clearly established that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)

91.    Defendants were physically able and had a realistic chance of stopping constitutional law violations by their fellow officers, but they refused or failed to take reasonable steps to stop the excessive force.

92.    Defendants allowed and/or failed to intervene to stop the violation of Furman's civil rights.

93.    Defendants allowed and/or failed to intervene in Defendant Scaglione and/or Girouard's actions which exceeded the level of force necessary to enforce compliance with lawful commands.

94.    Defendants allowed and/or failed to intervene in Defendant Scaglione and/or Girouard's actions which exceeded their lawful authority to enter someone's home to effectuate a warrantless arrest.

95.    At all relevant times, Defendants acted under color of state law as

law enforcement officers with the Tampa Police Department.

96.    As a direct and proximate result of Scaglione and Girouard's conduct, Mr. Furman suffered damages, including mental anguish, bodily injury requiring surgery, pain and suffering, emotional distress, medical treatment.

WHEREFORE, Mr. Furman demands judgment against Scaglione, and Girouard for damages, punitive damages, injunctive relief, prejudgment interest in liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial as to all counts so authorized.

Respectfully submitted,

**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3105
Miami, FL 33131
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
johand@kuehnelaw.com
efiling@kuehnelaw.com

By:    *S/ Michael T. Davis*
       **BENEDICT P. KUEHNE**
       Florida Bar No. 233293
       **MICHAEL T. DAVIS**
       Florida Bar No. 63374
       ***Counsel for Plaintiff***

### CERTIFICATE OF SERVICE

I certify on June 18, 2026, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify this document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel

or parties not authorized to receive electronically Notices of Electronic Filing.

By:    *S/ Michael T. Davis*
          **MICHAEL T. DAVIS**